Green, Judge,
delivered the opinion of the court:
In June 1917 the plaintiff executed a written contract for the purchase of timber to be cut by it on the Klamath Indian Reservation. The contract stated that it was made by “the Superintendent of the Klamath Indian School, for and on behalf of the Klamath Indians” and that the purchaser agreed to pay the value of the timber to “the Superintendent of the Klamath Indian School, State of Oregon, for the use and benefit of the Klamath Tribe of Indians.” The contract referred to the Klamath Indians as “party of the first part” and stated that “the party of the first part agrees to sell to the said Lamm Lumber Company,” on the conditions stated, certain timber upon a designated area and that the Lamm Lumber Company “agrees to pay to the Superintendent of the Klamath Indian School, State of Oregon, for the use and benefit of the Klamath Tribe of Indians,” the value of the timber at prices fixed in the manner prescribed by the contract. This contract, which is set out in full in Exhibit A attached to the petition, is referred to in argument as a “tribal” contract. This tribal contract also specified that the sale area included twenty-three allotments as to which the purchaser agreed to enter into separate contracts with the Indians who desired to sell for the purchase of timber on their allotted lands at prices fixed therefor.
The petition is in two counts. The first count alleges that pursuant to the provisions of the tribal contract plaintiff entered into a contract with John Cole, father of one John W. Cole, a minor, and an Indian under the jurisdiction of the Superintendent of the Klamath Indian school, by which John Cole agreed to sell to the plaintiff the timber upon certain land described in the contract which had been allotted to John W. Cole and plaintiff agreed to pay for said timber to the Superintendent of the Klamath Indian school in the manner set out in the contract; and on August 31, 1918, $650 was paid to the Superintendent of the Klamath Indian Agency as an advance payment under the contract. On March 2, 1919, John W. Cole died, and the Secretary of *183 the Interior having determined that his father, John Cole, was sole heir, the United States issued in November, 1920, to John Cole a fee simple patent for the land upon which the timber was located which had been sold to the plaintiff as above stated. On March 26, 1921, John Cole and his wife deeded this land to Luke E. Walker and in 1925 a controversy arose between Walker and the plaintiff respecting the right to cut timber on the Cole allotment. About June 1926 Walker commenced suit against the plaintiff to restrain the cutting of timber on the land which had been conveyed to him by John Cole and other land, demanding treble damages. Plaintiff filed an answer to the suit begun by Walker asserting superior title, but on June 18, 1928, a compromise having been effected, a consent judgment was entered against plaintiff in the sum of $15,000 in favor of Walker and about the same time as a part of the settlement Walker deeded to plaintiff the realty which had been conveyed to him by John Cole and assigned to plaintiff all his interest and title in the proceeds of the timber upon the Cole allotment paid or to be paid by the plaintiff to the Superintendent of the Klamath Reservation. In the meantime, the Superintendent of the Klamath Reservation had been paid the sum of $12,869.31 for timber cut by plaintiff on the John W. Cole allotment.
After the settlement of the suit begun by Walker, the Superintendent of the Klamath Indian Agency refunded to plaintiff the sum of $11,189.17, but deducted out of the total amount paid by plaintiff for the timber on the Cole allotment $650 paid as an advance payment by the plaintiff and $1,029.54, being 8 per cent of the total amount paid which was retained by the defendant to reimburse it for the expenses incident to administering the contract between the plaintiff and John Cole.
The first count of the petition is based on the allegation that plaintiff paid $15,000 in settlement of the suit brought against it by Walker under the circumstances above described, that it also paid an attorney’s fee of $1,000 and miscellaneous expense aggregating $63.75 in effecting the compromise settlement of Walker’s suit, making a total of expenditures in connection with its purchase of timber on *184 the Cole allotment of $1,663.75, and it seeks to recover the difference between the sum repaid by the Superintendent and its total amount of expense in connection with the suit by Walker as above recited. This difference is $4,873.98 for which sum plaintiff asks judgment.
When the claim set up in the first count of the petition is analyzed in connection with the facts stated therein, it will be seen that it is in the nature of a suit seeking to recover damages by reason of defendant having issued the patent to John Cole through whom Walker acquired title. The defendant sets up several defenses to this count none of which need to be considered unless the evidence establishes that the plaintiff was in fact damaged as a result of the patent having been issued to Cole in the manner above set forth.
It has already been shown that John Cole and his wife deeded this land to Luke E. Walker and thereafter Walker commenced a suit against the plaintiff seeking treble damages for the timber cut from this tract and another parcel of land and for trespass. In plaintiff’s argument this suit seems to be treated as if it related solely to the land specified above, but the fact is that the petition in the suit of Walker v. plaintiff was in two counts and while both counts sought to recover treble damages for timber cut and trespass, the first count pertained to an altogether different tract of land from the parcel involved in this suit, and the cause of action set out therein had no connection whatever with the tract conveyed by patent to John Cole upon which Walker in the second count alleged the Lamm Lumber Company had unlawfully cut timber and trespassed. There was also a general allegation at the close of the petition claiming further damages in the sum of $1,800 independently of the two counts. The total amount of the items of both counts of the petition in the Walker suit and the general allegation was $5,588.67, the amount claimed on the second count being somewhat larger than stated in the first. The Lamm Lumber Company paid $15,000 in settlement of the suit begun by Walker and a consent-decree was entered therein on June 18, 1928, reciting that the judgment was rendered for timber cut *185 on the two tracts, describing them separately, and as a determination of all liability of the defendant [Lamm Lumber Company] to the plaintiff [Walker] on account of the various matters recited in the complaint. A few days prior to the payment of the judgment Luke E. Walker deeded to plaintiff the realty theretofore conveyed to Walker by John Cole which was the same realty as was described in the timber contract between John Cole and the plaintiff. This conveyance was made part of the settlement of the suit.
There is no evidence whatever to show how much was paid on the respective counts or that there was any separation thereof in making the settlement. If we were to assume (as we think cannot be properly done) that in the settlement of the case payments were made upon each count in proportion to the amount claimed therein, the amount paid in relation to the timber tract involved will be several thousand dollars less than the sum which plaintiff agreed to pay for the timber thereon. As has been previously shown, the defendant refunded to the Lamm Lumber Company all that it had paid on the timber contract except $1,679.54. If wei can reach any conclusion out of this indefinite state of facts it is that on the transaction as a whole (including the purchase of the timber, the settlement of the Walker case, and the refund of $11,189.77 made by the Government) plaintiff made a profit even when its attorney’s fees and expenses are included in the cost of the suit.
It may be contended that plaintiff is entitled to recover the $650 which was not refunded by the defendant on the purchase price of the timber, but we think the transaction with reference to the land in sec. 30, twp. 33 south, range 7 E. W. M., should be considered as a whole in determining whether plaintiff was damaged and that it definitely appears that it was not.
Plaintiff’s cause of action on the first count is without merit and will be dismissed.
The action set out in the second count of the petition is begun under the so-called tribal contract. In this count, the plaintiff seeks to recover the amount of an increase prescribed by the Commissioner of Indian Affairs in the- price *186 of timber cut above the original contract price. Plaintiff contends that this increase was wrongful and made in violation of the contract.
The tribal contract provided in substance that any advance in stumpage rates to be paid by plaintiff should not exceed fifty per cent of the increase in the average mill run wholesale net value of lumber at mills in Southern Oregon and Northern California during the three years preceding January 1, of the year in which the new prices were fixed. The defendant introduced in evidence Exhibit R, a, report in 102 pages, giving statistical information of stumpage rates and wholesale prices of lumber at each of the mills in the Klamath District for the years to which their several contracts applied together with other matters bearing thereon, all in detail. This exhibit was compiled by the Assistant Director of Forestry and the Assistant Forester. The increase in controversy was made April 1, 1928. This exhibit shows that instead of there being any increase in the value of lumber at the mills over the average price for the three years preceding, there was an actual decrease of about $3 per M feet. This seems to be virtually conceded by defendant and definitely shows that the Commissioner had no authority to make the increase in the stumpage price by reason of which plaintiff was required to pay in addition $12,126.39. This matter is considered more at length in the opinion rendered this day in the case of Forest Lumber Co. v. United States, No. L-391 (post, p. 188), where a similar state of facts (a different period being involved) was presented to this court under the same kind of a contract.
Having reached the conclusion stated above, it is unnecessary to consider the other matters which plaintiff claims show that the increase was not made in accordance with the provisions of the contract. The advance in price not having been authorized by the contract, an implied agreement arose to repay the additional amount collected, unless, as contended by defendant, the contract does not bind the Government in any way and it is not responsible for any act done contrary to the agreements contained therein.
It is urged on behalf of defendant that in making the so-called tribal contract in suit through its officials it was *187 merely acting for the Indians, in their behalf, and for their interest; therefore there was no' responsibility on its part for the performance of the contract. In effect the claim is that the defendant, acting through its officials, was merely an agent and that the contract is not a contract of the Government but a contract of the Klamath Indians.
The case is a very peculiar one and we find no authorities directly in point. The contract recited it was made by “the Superintendent of the Klamath Indian School, for and on behalf of the Klamath Indians,” and that the purchaser agreed to pay the value of the timber to “the Superintendent of the Klamath Indian School, State of Oregon, for the use and benefit of the Klamath Tribe of Indians.” The contract referred to the Klamath Indians as the “party of the first part” which agreed to sell to the plaintiff certain timber and the final agreement was that the plaintiff should pay to the Superintendent of the Klamath Indian School “for the use and benefit of the Klamath Tribe of Indians” the value of the timber at prices fixed in the contract. But that the Government was not the agent of the Indians is clear. An agent is one who acts for another under authority given by the other party. The Government did not act under any authority given by the Indians. It acted in its own right somewhat in the manner that a guardian might act for a ward. The contract was executed by the Superintendent of the Klamath Indian School by authority of law. In what he did he was acting for the Government, and in what the Government did it was acting under its own rights and powers. It was not authorized by the Indians to make the contract nor was it approved by them; it' was approved by the Secretary of the Interior. While the Indians had a beneficial interest in the timber to be cut they lacked power to dispose of it. Any contract made by them would not be binding; and, as it would not be binding upon the Indians, it would not be binding upon the other party and would be merely a nullity. We think that where one who executes a contract acts solely under his own powers and rights he becomes liable thereon although the instrument specifies that it is executed in behalf of and for the benefit of a third party. The fact that a contract is entered into by one party for and *188 on behalf of another party does not necessarily make the contract one of the party who acquired the beneficial interest. We think the words “in behalf of” and “for the benefit of” were used in the contract under consideration for the purpose of showing that the benefits of the contract accrued to the Klainath Indians and not to the United States. Moreover, if the Government was not responsible on the contract, no one was. It is contended that the Government acted in its sovereign capacity in making the contract. This principle applies in certain cases where damages are alleged to result from laws passed by Congress, approved by the President, and then put in force, but we think the principle has no application here. In one sense the Government did act in its sovereign capacity but it is in the same sense that it acts in making any contract which its sovereign powers authorize it to execute. We think the Government can not be heard to deny its responsibility.
It follows from Avhat has been stated above that the plaintiff is entitled to recover on the second count of the petition the amount of overpayment on the contract resulting from the increase prescribed in 1928. Judgment will be rendered accordingly.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.